HORTON v. LINCOLN COUNTY.

[77 South. 796, Division B.]

1. ANIMALS.    *Tick eradication. Death of animals. Liability. Laws 1914, chapter 222.    Construction.*

Laws 1914, chapter 222, providing for the dipping of cattle to eradicate ticks, and authorizing the board of supervisors on satisfactory proof to pay for damages suffered by the owner of the cattle in the process of dipping, is not a statute creating an absolute liability against the county, but is an enabling statute to authorize the board to pay such claims in any amount they may consider to be proper for such injury within the limits prescribed by the statute and when the board of supervisors disallow such claims the owner cannot recover from the county.

2. PLEADINGS.    *Conclusions. Negligence.*

In a suit for damages caused by negligence it is not sufficient to allege negligence as a mere conclusion or inference. Facts must be pleaded showing negligence.

APPEAL from the circuit court of Lincoln county.
HON. D. M. MILLER, Judge.

Suit by A. N. Horton against Lincoln county. From
a judgment sustaining a demurrer to the declaration,
plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Jas. F. Noble,* for appellant.

The circuit judge committed error in sustaining the
demurrer to the declaration.   Chapter 222 of the Acts
of the Mississippi legislature of 1914, clearly authorizes
the board of supervisors to pay a claim of this nature.
The word "may" in this. law is properly interpreted
"must."   A regular and honest claim of this kind
must be paid by the board of supervisors.   The dec-
laration in this case is lacking in no essential allega-
tion to bring appellant's claim within the requirements
of the statute.   The circuit judge held that the board of
supervisors have arbitrary power to pay or not pay a
perfectly regular and truthful claim of this nature.   I
deny the correctness of the learned judge's ruling.   I
insist that a claimant, whose honest claim has been re-
jected by the board, has the legal right to go to the
courts for protection.   I refer the court to following de-
cisions regarding the meaning of "may."   *Smalley* v.
*Paine,* 102 Tex. 304; *Montgomery* v. *Henry,* 144 Ala.
629; *Henry* v. *State,* 87 Miss. 1; *Trial* v. *Trial,* 56 W.
Va. 594; 105 Mo. App. 98, 95 S. W. 98; 95 N. E. 400.

It would be very unwise to vest the board of super-
visors with arbitrary power in this matter.   It would
give free rein to the board to do exactly as it pleased,
to do right or wrong, show partiality, punish an enemy
or reward a friend, even as in the instant case, reject a
perfectly honest claim.   The law certainly is that a
dissatisfied claimant has the legal right to take his
cause of complaint to a jury for hearing and determi-

nation, where, under the direction of the court, justice and right are more likely to prevail.,

I really think that the "due process" clause of the National Constitution would be violated if it should be held that the owner of cattle injured or killed as a result of being dipped has no recourse against the county for compensation for his loss.

When chapter 222 of the Acts 1914, was enacted, a liability was imposed on the board of supervisors to pay every genuine claim of owners of cattle injured or killed in the process of being dipped. It is in legal contemplation an indebtedness due by the county to said owners.

Section 4627 of the Code of 1906, authorizes the board of supervisors to pay teachers indebtedness due for teaching, and states they may pay the indebtedness if they believe it is right and proper. I contend that chapter 222 and section 4627 are to be construed exactly alike; that "may" means "must" in each law; that the board of supervisors "must" pay the owner for injuries done his cattle as it also "must" pay the teacher. *Hebron Bank* v. *Lawrence County,* 109 Miss. 397, holds that "may" in section 4627 means "must." I insist that the phraseology and substantial meaning of both statutes are virtually identical in regard to the payment of the claims. I ask that the court read these two statutes together, in the light of the decision just quoted, and I feel confident that when this is done, my contention will be adopted as correct. I also refer the court to 11 Cyc., 594, near the end of paragraph C., which holds, as I understand, that when the legislature authorizes a county board to pay a claim of this nature, it is mandatory.

I am sure it is right for claims like this one to be paid. The owner of cattle have to dip; if they refuse, they violate the law, commit crime. They must subject their property to known danger, without their permission or

consent; then, surely when they suffer loss, they should receive just compensation. I ask in all earnestness that this case be reversed and appellant given the right to place his cause before a jury for determination. I submit the case confident in the belief that this court will see the wisdom and righteousness in reversing the lower court and permitting appellant to take his cause of complaint to a jury of his peers, where justice and right may be confidently expected.

*Frank Roberson,* for appellee.

Chapter 167, of the Laws of 1916, is commonly known as "the state-wide tick eradication law," and I assume that the cow killed in the instant case was dipped pursuant to the state-wide law.                          ,

I call the court's attention to the fact that there is no provision in chapter 167, of the Laws of 1916, for the compensation of the owners of cattle killed or permanently injured in the process of dipping. However, the attorney-general's office has held that chapter 222, of the Laws of 1914, which provides for the compensation of owners for cattle killed or permanently injured in the process of dipping, was not superseded by the state-wide tick eradication law, but that the 1914 Act is still in force and the board of supervisors, in their discretion, have the authority to pay for such damages even though the dipping was done under the state-wide act and not by the local option act which was in force prior to 1916. The attorney-general's office has held many times that chapter 222, Laws of 1914, made it discretionary with the board of supervisors as to whether compensation should be made. I call the court's attention, to chapter 221, Laws of 1914, which provides that the inspector, under whose supervision the dipping of cattle is done, is under a bond of two thousand dollars conditioned upon the faithful perfor-

mance of his duties. Section 2, of this act specifically provides that such inspector shall be civilly liable on his official bond for any damages to cattle or other live stock resulting from his negligence or incompetency. The appellant, in the instant case, had ample recourse against the bonded agent of the county for the damage caused by his negligence as alleged in appellant's declaration.

Counsel for appellant, in his brief, cites several authorities on the proposition that the word, "may" is sometimes interpreted as "must." Of course, the determination as to whether the word, "may" shall be interpreted as "must" will depend upon the particular statute itself, and I don't know that a decision on another statute. throws any helpful light on the statute in question. The history of the statute in question should afford assistance in the interpretation of chapter 222 of the Laws of 1914.

The case of *Hebron Bank* v. *Lawrence County,* 109, Miss. 394, construing section 4627, of the Code of 1906, is cited by the counsel for appellant. He contends that because the court decided that the word, "may" in that section meant "must" that it logically follows that the same words should receive the same interpretation in the present statute. I have no fault to find with that feature of the Hebron Bank decision, but I feel quiet sure that even in that case, section 4628 was not called to the attention of the court. In the Hebron Bank case, section 4627 could not have been available until the official bond of the county superintendent of education had been exhausted under section 4628. Be that as it may, I submit that the interpretation of the words, "may" and "must" in that case is of no assistance in the present instance.

This is equally true of the case of *Town of Carrolton* v. *Town of North Carrolton,* 109 Miss. 494, cited in the additional brief of counsel for appellant.

116 Miss.—52

Both of those cases sound in *ex contractu,* whereas the case at bar is necessarily one sounding in tort. This distinction is very vital as I see it. Our court has held many times that the county is not responsible for the tortious act of its agents. *Sutton and Dudley* v. *Board of Supervisors, of Carroll County,* 41 Miss. 236; *Branham* v. *Board of Supervisors,* 54 Miss. 363. This is the common law and has not been changed by statute. It is a mere gratuitous action on the part of the state to compensate owners for damages arising in the protection of the health of the public under its police power.

It was held, in *New Orleans* v. *Charonleau,* 46 So. 911, 18 L. R. A. (N. S.) 368, that diseased cows might be destroyed as a police regulation without making compensation to the owner. See also, *Huston* v. *State,* 98 Wis. 48, 74 N. W. 111; 42 L. R. A. 39; 28 Am. Rep. 352.

In *Ross* v. *Denshaw Levee Board,* 83 Ark. 178, 103 S. W. 380, 21 L. R. A. (N. S.) 699, it was held that a statute authorizing the killing of hogs running at large on levees without making compensation to the owners was valid under the police powers of the state. So it follows that the appellant had no constitutional right of compensation.

It is contended by counsel for appellant that chapter 38 passed at the extraordinary session of the legislature of 1917, making it mandatory upon the board of supervisors to compensate owners for cattle killed, is a legislative interpretation of chapter 222, of the Laws of 1914. I think the converse is true. I have investigated the original house journal as to the passage of this statute, which was known as Senate Bill 22, and find that it received an unfavorable report from the judiciary committee and was brought up on a minority report. It is fair to presume that the minority report gives the real reason and true history as to the passage of this act. The minority report contained the following reasons for its passage: "We believe it to be a

meritorious measure, and one that is fair and right to any person having a claim against the county.''

There is not even a suggestion that it was the original intention of the legislature to make the compensation to owners mandatory upon the board of supervisors, but the only reasonable inference that can be drawn is that the act passed in 1917, was intended by the legislature to afford a substantial right not heretofore given by the legislature. This bill seems to have passed the house by a narrow majority, having received a vote of seventy-one yeas and fifty-six nays.

In conclusion, I submit that this case should be affirmed because the action is based on tort and a county cannot be sued for the tortious acts of its agents. Furthermore, there is no injustice done to the cattle owners, since he has an ample remedy under chapter 221, Laws of 1914, against the bonded inspector and his sureties.

ETHRIDGE, J., delivered the opinion of the court.

A. N. Horton, a citizen of Lincoln county, filed a suit in the justice court of district 1 of said county against the board of supervisors for damages for dipping a cow in April, 1917. The declaration is in the following words:

''Comes plaintiff, resident citizen of Lincoln county, Miss., and complains of Lincoln county, and states the cause of action: That in April, 1917, he was compelled under the law of the state of Mississippi to dip a cow. That when the cow was dipped, she got some of the mixture in which she was dipped in her mouth and swallowed it, which caused her death in a few days thereafter. Said cow being the property of this plaintiff. That the drinking and the swallowing of the said mixture was due to the negligence and carelessness of the inspector under whose direction the said cow was dipped. Said inspector was duly appointed as provided

by law. Said claim was properly filed before the board of supervisors of Lincoln county, Mississippi, in, accordance with law, and was by said board disallowed. That the cow was a valuable one, and was worth fifty-five dollars. Plaintiff, therefore, sues and demands judgment for the sum of fifty-five dollars and all cost of this suit.''

The judgment of the justice court was for the plaintiff, and was appealed to the circuit court. In the circuit court the county interposed a demurrer on the following grounds: First, the declaration states no cause of action; second, the plaintiff cannot recover in this case because the county is not liable as a matter of law; and, third, the matter of payment of cattle injured or killed by dipping is discretionary with the board of supervisors, and the claim shows on its face that the board of supervisors had disallowed it, and the claim cannot be sustained. The court below sustained the demurrer, and the plaintiff appeals here.

The plaintiff relies upon chapter 222 of the Laws of 1914. Section 1 of this act provides that the board of supervisors of any county in this state in which the dipping of cattle for the eradication of the cattle tick has been conducted under the authority of the board of supervisors, and in cases where cattle are hereafter dipped under the authority of the board, is authorized to pay out of the general funds of such county to the owner of cattle such loss or damage as may have been suffered by such owner because of the death or permanent injury to such cattle in the process of dipping, provided, that any one claim shall not exceed one hundred dollars. Section 2 is in the following words:

''That any owner of cattle making a claim for the death or injury of his cattle under this law shall make proof of the amount of his loss or damage to the board of supervisors, to the satisfaction of the said board of

supervisors. And when proof has been made or sub-
mitted to the board that is satisfactory to it that the
owner of cattle has suffered loss or damage because of
the death or permanent injury of his cattle in the pro-
cess of dipping, or as the result of dipping, the board
may allow to such owner such fair and reasonable dam-
ages as in the judgment and discretion of the board will
compensate him for his loss or damage.''

We think this statute is not a statute creating an
absolute liability against the county, but is an enabling
statute to authorize the board of supervisors to pay
such claims in any amount they may consider to be
proper for such injury. The very terms of section 2
of the act provide that the proof must be to the satis-
faction of the board of supervisors, and that when
proof has been made and submitted to the board that
is satisfactory to it, the board may allow such claim-
ant such fair and reasonable damage as in the judgment
and discretion of the board will compensate him for his
loss or damage. We think this statute was passed for
the purpose of preventing so many local bills being
introduced to enable the board to pay in their discretion
certain persons for cattle dipped. This conclusion
is strengthened by the fact that chapter 221 of the
Laws of 1914 requires the inspectors and other officers
appointed to conduct the inspection and dipping of
cattle to give bond in the sum of two thousand dollars,
conditioned for the faithful performance of their duties,
and providing that such inspectors or other officers
shall be civilly liable on his official bond for any dam-
ages to cattle or other live stock resulting from his
negligence or incompetency.

We are further of the opinion that the declaration
does not charge any fact from which incompetency or
neglect can legally be. determined. It is not sufficient to
allege negligence as a mere conclusion or inference.

Facts must be pleaded showing negligence. But as we do not think the county is liable, this feature is not material here. It should be noted further that the legislature in 1916 passed a state-wide tick eradication law, in which all discretion was removed from the board of supervisors as to whether dipping would be conducted or not. The circuit court having reached the same con-conclusions, the judgment will be affirmed.

*Affirmed.*